# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 1 2 2009

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

JIMMIE L. REAVES, )
)
    Plaintiff, )
)
v. )    **Civil Action No. 7:08-cv-00560**
)
ROANOKE REDEVELOPMENT AND )    <u>MEMORANDUM OPINION</u>
HOUSING AUTHORITY, )
)    **By: Hon. James C. Turk**
and )    **Senior United States District Judge**
)
BILL SIZEMORE, )
)
    Defendants. )

This matter is presently before the court on Defendants Roanoke Redevelopment and Housing Authority ("RRHA") and Bill Sizemore's ("Sizemore") Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 6) and Motion for Sanctions pursuant to Fed. R. Civ. P. 11 (Docket No. 15). Plaintiff Jimmie Lee Reaves ("Reaves") initially brought this action seeking damages arising from a landlord-tenant relationship with the RRHA. Following the filing of Defendants' Motion to Dismiss and Motion for Sanctions, Reaves filed various responsive documents (Docket No.'s 10, 11, and 20), and the court heard oral arguments on February 4, 2009. Both parties presented materials outside of the pleadings for consideration, and thus the court will treat Defendants' motion as one for summary judgment. Fed. R. Civ. P. 12(d) (2008). For the reasons that follow, the court will grant Defendants' Motion for Summary Judgment in its entirety and will grant Defendants' Motion for Sanctions in part.

### I.

Jimmie Reaves is a pro se plaintiff who previously resided at Hunt Manor, an apartment community owned and operated by the RRHA. Reaves first began living at Hunt Manor in

December, 2002, when he signed a one-year lease for a single-bedroom apartment (811 Hunt Avenue Apt 3). On or about June 12, 2003, the RRHA mailed Reaves a "30-Day Moving Notice" concerning some renovation work being done on or near Reaves' apartment. The Moving Notice stated that because Hunt Manor was replacing the exterior stairs, upstairs porches and downstairs porch slabs, Reaves would be forced to vacate his apartment for safety purposes. The Moving Notice also stated that the RRHA would provide Reaves with a new apartment and would pay moving expenses including any charges necessary for the transferring of cable and phone connections.

Having received no response from Reaves for nearly two weeks, on or about June 27, 2003, the RRHA sent a second moving notification letter to Reaves. In this letter, the RRHA notified Reaves that he would be relocated to a two-bedroom apartment (809 Hunt Ave. Apt. 1). The letter also stated that the move was scheduled for July 11, 2003, and it was necessary for Reaves to complete certain paperwork to enable the RRHA to secure any and all moving services that would be required. Again, Reaves failed to respond.

Finally, on or about July 3, 2003, Defendant Bill Sizemore approached Reaves in person to discuss the impending move. According to Reaves, Sizemore promised during this discussion that: (1) the RRHA would reimburse Reaves for any out-of-pocket expenses; (2) Reaves would be moved back into his original apartment at the completion of the renovations; and (3) while living in the two-bedroom replacement apartment, the RRHA would not increase Reaves' rent. At this time, Sizemore also required Reaves to sign a new lease for the replacement apartment.

After executing the lease and receiving keys for the two-bedroom apartment, Reaves inspected his new home for the first time. According to Reaves, the apartment was littered with building supplies, the utilities were disconnected, paint was peeling from the walls, and the

2

ceilings were on the verge of collapsing. Despite these problems, Reaves cleaned up the apartment to the best of his abilities and reported only the utility problem to Sizemore, who took immediate steps to ensure that the utilities were working. Reaves then moved into the apartment.

Beginning two-weeks later, Reaves received monthly rental invoices indicating that he owed $349.00 to the RRHA for the rent on the two-bedroom apartment. Reaves received these notices every month for the duration of his residence at the two-bedroom apartment. Despite these notices, Reaves refused to pay the $349.00 owed and remitted only $263.00 per month to the RRHA. Reaves justified this amount based on Sizemore's purported promise that Reaves' rent would not increase as a result of the move.

By December of 2003, Reaves owed the RRHA more than $600.00 in unpaid rent. The RRHA eventually took legal action in the form of an eviction. In response, Reaves initiated a lawsuit in the Virginia State Courts alleging various claims against the RRHA and its employee, Bill Sizemore. Among his allegations, Reaves claimed that the RRHA breached its contractual duties with Reaves by "tricking" him into signing a new lease agreement, by illegally moving him into a larger apartment with higher rent, and by failing to reimburse him for moving expenses. Reaves further alleged that the two-bedroom apartment was inhabitable and infested with asbestos. Finally, Reaves claimed that the actions of the RRHA (Sizemore and Briggitt Harris in particular) were racially-motivated and caused him damages in the sum of $15,000.

On June 4, 2008, Reaves' State Court claims were tried in Roanoke City General District Court, Case No. GV08005757. When Reaves completed his presentation of evidence and rested his case, the State Court granted a Defendants' Motion to Strike on grounds that the evidence presented by Reaves was insufficient to support any of his claims. The State Court then entered

3

judgment for the Defendants and dismissed the action. The State Court also expressly advised Reaves of his statutory right to appeal the judgment to the Roanoke City Circuit Court.

Reaves did not appeal the decision. Instead, he filed a new case in federal district court against the same defendants, this time seeking damages in the sum of $41,499.00 for breach of contract, failure to provide an adequate rental unit, and emotional distress and/or other unspecified injury based on purported exposure to asbestos and lead paint. Reaves v. Roanoke Redevelopment and Housing Authority, No. 7:08-cv-480, slip copy, 2008 U.S. Dist. LEXIS 84263 (W.D. Va. Oct. 21, 2008). After hearing oral arguments on the matter, this court granted a Defendants' Motion for Summary Judgment on grounds that res judicata prohibited Reaves from bringing "any claims in federal court that were previously litigated, or could have been litigated, in [his] prior state court action." Id. at *15. Judgment, again, was entered in favor of the Defendants, and, again, Reaves did not appeal.

A mere three days after the court issued its decision in Case No. 7:08-cv-480, Reaves filed the instant cause of action.[1] In his Complaint, Reaves seeks to assert claims under 42 U.S.C. § 4852d based on an alleged failure of the RRHA to provide disclosures of lead-based paint hazards as required by Federal law. Reaves contends that at no time did the RRHA provide him with any disclosure of lead-based paint hazards at Hunt Manor, and as a result of this alleged failure to disclose, he and his family members were "expose[d] to lead base[d] dust paint and asbestos" and that he was "den[ied] the right[] to know about the danger of these[] dangerous toxins." (Compl. at 4). For these injuries, Reaves seeks compensatory and punitive damages in the sum of $280,000.00.

---

[1] The court notes that this is Reaves' fourth attempt to bring a cause of action against the RRHA. Besides those efforts already mentioned herein, Reaves also filed an action against the RRHA in the City of Roanoke Circuit Court, asserting the same claims as he brought in his first State Court Action. Reaves attempted to file this claim on April 24, 2008, more than two months before his original case was tried in the Roanoke City General District Court. The Circuit Court dismissed the Complaint, however, on grounds that Reaves failed to sign the required affidavit.

4

## II.

According to Rule 12(d) of the Federal Rules of Civil Procedure, if matters outside the pleadings are presented to and not excluded by the court in a motion to dismiss, the motion must be treated as one for summary judgment. Fed. R. Civ. Pro. 12(d) (2008)[2]; see also Wilson-Cook Medical, Inc. v. Wilson, 942 F.2d 247, 252 (4th Cir. 1991) (converting a motion to dismiss into a motion for summary judgment applies only to a motion made pursuant to Rule 12(b)(6)). Before a court may properly convert a motion to dismiss to a motion for summary judgment, however, all parties must be given reasonable notice and the opportunity to present any additional material made pertinent by the conversion. Fed. R. Civ. Pro. 12(d) (2008); see also Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985) (quoting Johnson v. RAC Corp., 491 F.2d 510, 513 (4th Cir.1974)) (The term "reasonable opportunity" requires that all parties be given "'some indication by the court . . . that it is treating the 12(b)(6) motion as a motion for summary judgment,' with the consequent right in the opposing party to file counter affidavits or pursue reasonable discovery."). The necessity of this notice stems from a recognition that, although the two motions are functionally equivalent in their potential result, they are not the same in practice. Aldahonda-Rivera v. Parke Davis & Co., 882 F.2d 590, 591 (1st Cir. 1989). Notably, while Rule 12(b)(6) motions to dismiss are decided solely on the pleadings, a motion for summary judgment may rely on additional outside evidence. Id. Sufficient notice thus ensures that genuine issues of material fact will be brought to the trial court's attention by affording the nonmoving party an opportunity

---

[2] Federal Rule of Civil Procedure 12(d) states as follows:

> Result of Presenting Matters Outside the Pleadings. If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. Pro. 12(d) (2008).

Case 7:08-cv-00560-JCT   Document 22   Filed 02/12/09   Page 5 of 16   Pageid#: 290

to "marshal its resources" and rebut the motion for summary judgment with every factual and legal argument available. Denis v. Liberty Mut. Ins. Co., 791 F.2d 846, 850 (11th Cir. 1986).

Where one of the litigants proceeds pro se, a number of courts have found that more explicit notice is required before a motion to dismiss can be converted into a motion for summary judgment. See e.g., Davis v. Zahradnick, 600 F.2d 458, 460 (4th Cir. 1979) (error where district court failed to explain to pro se plaintiff that the conversion of a motion to dismiss into a motion for summary judgment entitled plaintiff to file counter affidavits or other responsive material). This is particularly important where a pro se litigant's failure to file counter-affidavits or other responsive documents might result in the court's entry of summary judgment against him. Id., see also Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (notice must be sufficiently clear to be understood by a pro se litigant and calculated to apprise him of what is required under Rule 56).

In the instant case, the court provided Reaves with both reasonable and explicit notice of its intention to convert Defendants' Motion to Dismiss to a Motion for Summary Judgment before and during the hearing on February 4, 2008. The Clerks Office mailed Reaves a Roseboro Notice on January 13, 2009, stating that Reaves had twenty (20) days to submit "any further counter-affidavits or other relevant evidence contradicting, explaining or avoiding defendants' evidence." The Notice further explained that "if documents or affidavits outside the pleadings are submitted by either party, any remaining motion(s) to dismiss under Rule 12(b)(6) of the Federal Rules of Federal Civil Procedure may be considered as motion(s) for summary judgment under Rule 56 of the Federal Rules of Federal Civil Procedure." At the commencement of the hearing on February 4, 2009, the court explicitly stated its intention to treat the Motion to Dismiss as one for Summary Judgment. The court justified this decision on

the basis that both parties had filed—and intended to argue—matters outside the pleadings, and the court gave both sides an opportunity to object to the conversion. Neither party did so.

The court, therefore, will hereafter treat Defendants' Motion to Dismiss as a Motion for Summary Judgment. The court must view the facts, and inferences to be drawn from those facts, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Nguyen v. CNA Corp., 44 F.3d 234, 236-7 (4th Cir. 1995). Summary judgment is only proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### III.

Defendants offer multiple grounds to support a granting of summary judgment in the instant case: (1) res judicata; (2) insufficient evidence to prove noncompliance with 42 U.S.C. § 4852d; (3) failure to establish any compensable injury cognizable under 42 U.S.C. § 4852d; (4) lack of standing to bring claims on behalf of family members; and (5) failure to state a claim upon which relief can be granted. Because the court finds that the first argument disposes of the Motion for Summary Judgment in its entirety, the court will address only that issue.

According to the Full Faith and Credit Clause of the U.S. Constitution and its implementing statute, 28 U.S.C. § 1738, federal courts must recognize and give effect to valid judgments rendered by other courts in the United States. U.S. Const. art IV, § 1. As part of this duty, federal courts must recognize the claim- and issue-preclusive effects, if any, of valid state court judgments. Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 293 (2005). In a non-diversity action, where the issues involved in a related prior judgment were issues of state law, it is state law, not federal law, which determines the applicability of these preclusion

7

doctrines. See Davenport v. North Carolina Dept. of Transp., 3 F.3d 89, 93 (4th Cir. 1993)

(applying state res judicata law in regards to 42 U.S.C. § 1983 claims brought in federal court).

The Virginia state courts have characterized res judicata as a judicially-created doctrine

that "precludes relitigation of the same cause of action, or any part thereof, which could have

been litigated between the same parties and their privies." Davis v. Marshall Homes, Inc., 265

Va. 159, 164, 576 S.E.2d 504, 506 (Va. 2003) (quoting Smith v. Ware, 244 Va. 374, 376, 421

S.E.2d 444, 445 (1992)). The Supreme Court of Virginia articulated the doctrine more clearly as

follows:

> When the second suit is between the same parties as the first, and on the same
> cause of action, the judgment in the former is conclusive of the latter, not only as
> to every question which was decided, but also as to every other matter which the
> parties might have litigated and had determined, within the issues as they were
> made or tendered by the pleadings, or as incident to or essentially connected with
> the subject matter of the litigation, whether the same, as a matter of fact, were or
> were not considered. As to such matters a new suit on the same cause of action
> cannot be maintained between the same parties.

Lofton Ridge, LLC v. Norfolk Southern Ry. Co., 268 Va. 377, 381, 601 S.E.2d 648, 650 (Va.

2004) (quoting Kemp v. Miller, Kemp v. Miller, 166 Va. 661, 674-75, 186 S.E. 99, 103-04 (Va.

1936)). Rule 1:6 of the Rules of the Supreme Court of Virginia similarly states:

> A party whose claim for relief arising from identified conduct, a transaction, or an
> occurrence, is decided on the merits by a final judgment, shall be forever barred
> from prosecuting any second or subsequent civil action against the same opposing
> party or parties on any claim or cause of action that arises from that same conduct,
> transaction or occurrence, whether or not the legal theory or rights asserted in the
> second or subsequent action were raised in the prior lawsuit, and regardless of the
> legal elements or the evidence upon which any claims in the prior proceeding
> depended, or the particular remedies sought.

Va. Sup. Ct. R. 1:6(a). Based on these definitions, a litigant seeking to assert res judicata as a

defense under Virginia law must establish four major elements: (1) identity of the remedy

sought; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the

8

quality of the persons for or against whom the claim is made. Davis v. Marshall Homes, 265 Va.

at 164, 576 S.E.2d at 506 (citing State Water Control Bd. v. Smithfield Foods, Inc., 261 Va. 209,

214, 542 S.E.2d 766, 769 (2001); Balbir Brar Assoc., Inc. v. Consolidated Trading and Serv.

Corp., 252 Va. 341, 346, 477 S.E.2d 743, 746 (1996); Wright v. Castles, 232 Va. 218, 222, 349

S.E.2d 125, 128 (1986)). The proponent of the defense must also establish that the judgment in

the former action is final and rendered on the merits by a court of competent jurisdiction.

Simmons v. Commonwealth, 252 Va. 118, 120, 475 S.E.2d 806, 807 (1996).

Applying these principles to the instant case, the court finds, again, that all the requisite

elements of res judicata are satisfied. Reaves seeks to assert new claims for the same remedies,

against the same parties,[3] and arising from the same set of operative facts, as he did previously in

his prior State Court action. The only difference between the two suits is that, having been

unsuccessful in claiming to have suffered unidentified personal injuries from asbestos, Reaves

now seeks to recover for other unidentified injuries by asserting that the Defendants exposed him

to lead-based paint. The court finds no reason why Reaves could not have litigated these claims

in State Court, and Rule 1:6 does not permit Reaves to pursue a second action to recover for the

same unidentified injuries merely by pleading a different legal theory.

There is also clear evidence that the prior State Court judgment was made on the merits.

A judgment is "on the merits" under Virginia law if both parties have "presented all their

evidence and the court . . . properly understood the facts and correctly applied the law to the

facts." Highsmith v. Com., 25 Va.App. 434, 440, 489 S.E.2d 239, 241-42 (Va. Ct. App. 1997).

---

[3] The only discrepancy between the parties named in Reaves' various complaints is the inclusion/absence of Briggitt Harris, whom Reaves did not include as a defendant in his State Court case or in the instant cause of action. The court finds this difference to be legally insignificant, however, as Harris is in privity with the RRHA for purposes of res judicata. See Whitley v. Commonwealth, 260 Va. 482, 491, 538 S.E.2d 296, 301-02 (2000) (the Commonwealth of Virginia and its employees are in privity for purposes of res judicata); see also Nero v. Ferris, 222 Va. 807, 813, 284 S.E.2d 828, 832 (1981) (an employee is in privity with his employer under Virginia law where the employer's liability was derivative based on the employee's acts).

In the instant case, the State Court transcript shows that Reaves raised and litigated the underlying conduct of the claims and that the State Court judge understood the evidence—or lack thereof—when dismissing the case.

Finally, because Reaves failed to exercise his right to appeal within ten days of the State Court judgment, the judgment is final and eligible for preclusive effect. See Va. Code § 16.1-106 (providing for an appeal of right from the General District Court to the Circuit Court if made within ten days of a judgment); TransDulles Center, Inc. v. Sharma, 252 Va. 20, 23, 472 S.E.2d 274, 276 (1996) (recognizing the preclusive effect of a final judgment of a general district court).

The court thus finds, again, that res judicata prohibits Reaves from asserting any claims in federal court that were previously litigated, or could have been litigated, in the prior State Court action. Va. Sup. Ct. R. 1.6(a) (emphasis added); see also Smith v. Holland, 124 Va. 663, 667, 98 S.E. 676 (1919) (Va. 1919) ("The effect of a final decree is not only to conclude the parties as to every question actually raised and decided, but as to every claim which properly belonged to the subject of litigation, and which the parties, by the exercise of reasonable diligence, might have raised at the time."). Because each and every claim in Reaves' Complaint arises wholly from the same conduct, transaction or occurrence as was at issue in the prior State Court judgment, the federal action is barred and the court must dismiss it. Accordingly, the court will grant Defendants' Motion for Summary Judgment in its entirety.

## IV.

In addition to Summary Judgment, Defendants also request that the court impose sanctions against Reaves. Defendants argue that sanctions are appropriate—even necessary—in the instant case given Reaves' repeated attempts to circumvent prior court judgments dismissing his claims. Defendants also contend that Reaves advanced his recent claims in bad faith and

10

without any reasonable investigation. By repeatedly bringing frivolous lawsuits, Defendants argue that Reaves has unfairly subjected the RRHA and Sizemore to substantial legal fees, costs, and inconvenience.

In determining whether sanctions are appropriate, the court looks to Federal Rule of Civil Procedure 11, which provides as follows:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). The court also notes that "Rule 11 sanctions are appropriate where a party files a claim barred by res judicata." Williams v. Florida Health Sciences Center, Inc., Slip Opinion 2007 WL 641328 at *4 (M.D. Fla. 2007), reconsideration denied in part, 2007 WL 924500 (citing e.g., Thomas v.Evans, 880 F.2d 1235, 1240 (11th Cir. 1989), cert. denied, 510 U.S. 1026 (1993)), aff'd, 293 Fed. Appx. 757 (11th Cir. 2008); see also Buster v. Greisen, 104 F.3d 1186, 1190 (9th Cir. 1997), cert. denied, 522 U.S. 981 (1997); In re Grantham Brothers, 922 F.2d 1438, 1442 (9th Cir.1991), cert. denied, 502 U.S. 826 (1991); Roberts v. Chevron, 117 F.R.D. 581 (M.D.La.1987), aff'd, 857 F.2d 1471 (5th Cir.1988).

11

Applying these principles to the case at bar, the court finds that sanctions are appropriate given that Reaves filed his most recent lawsuit with an improper purpose in violation of Federal Rule of Civil Procedure 11(b)(1). "An improper purpose may be shown by excessive persistence in pursuing a claim or defense in the face of repeated adverse rulings." Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte, 141 F.3d 1434, 1448 (11th Cir. 1998), cert. denied, 525 U.S. 1068 (1999); see also St. Amant v. Bernard, 859 F.2d 379, 384 (5th Cir. 1988) ("Repeat litigation of identical claims over identical subject matter may support an inference that the litigation was meant to harass opposing parties."). Here, Reaves has shown "excessive persistence" in filing multiple lawsuits against the same defendants, seeking the same remedies, and asserting claims arising from the same set of operative facts. Industrial Risk Insurers, 141 F.3d at 1448. The State Court dismissed Reaves' original claims for lack of evidence, and this court explained in its Memorandum Opinion, Case No. 7:08-cv-480, that "res judicata prohibits [him] from asserting any claims in federal court that were previously litigated, or could have been litigated, in [his] prior State Court action." Reaves v. Roanoke Redevelopment and Housing Authority, No. 7:08-cv-480, slip copy, 2008 U.S. Dist. LEXIS 84263, at *15 (W.D. Va. Oct. 21, 2008). Despite these repeated dismissals, Reaves filed the instant cause of action only three days after the court issued its judgment in Case No. 7:08-cv-480, asserting, again, claims that are intricately related to the prior State Court claims and which Reaves already unsuccessfully attempted to raise in federal court. This filing violated a clear order of the court, and it supports an inference that Reaves continues to file lawsuits for the purpose of harassing the Defendants. For that reason, the court concludes that sanctions are warranted.

"In fashioning an appropriate sanction to be imposed on a serial litigant, the Court must strike a balance between the needs of innocent defendants, the serial litigant's legitimate right to

the processes of the court, and the Court's Article III duty to protect its jurisdiction from abuse."
Morning Star Baptist v. James City County Police, 480 F. Supp. 2d 853, 860 (E.D. Va. 2007),
aff'd sub. nom., Cary v. Perry, 254 Fed. Appx. 167 (2007). Rule 11(c)(4) specifically provides
that an appropriate sanction "may include non-monetary directives." Fed. R. Civ. P. 11(c)(4).

One such non-monetary directive is a pre-filing injunction. Morning Star Baptist, 480 F.
Supp. 2d at 860. A pre-filing injunction has been held an appropriate sanction to deter the filing
of future frivolous litigation. Morning Star Baptist, 480 F. Supp. 2d at 860; Mazur v. Woodson,
191 F. Supp. 2d 676 (E.D. Va.2002); Lewin v. Cooke, 95 F. Supp. 2d 513, 528 (E.D. Va. 2000),
aff'd, 28 Fed. Appx. 186 (2002), cert. denied, 537 U.S. 881 (2002). Under Fourth Circuit
precedent:

> In determining whether a pre-filing injunction is substantively warranted, a court
> must weigh all the relevant circumstances, including (1) the party's history of
> litigation, in particular whether he has filed vexatious, harassing, or duplicative
> lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or
> simply intended to harass; (3) the extent of the burden on the courts and other
> parties resulting from the party's filings; and (4) the adequacy of alternative
> sanctions.

Cromer v. Kraft Foods North America, Inc., 390 F.3d 812, 818 (4th Cir. 2004) (citing Safir v.
United States Lines, Inc., 792 F.2d 19, 24 (2d Cir. 1986), cert denied, 479 U.S. 1099 (1987);
Green v. Warden, United States Penitentiary, 699 F.2d 364, 368-69, 370 n.8 (7th Cir. 1983), cert.
denied, 461 U.S. 960 (1983); and Pavilonis v. King, 626 F.2d 1075, 1078-79 (1st Cir. 1980),
cert. denied, 449 U.S. 829 (1980)). The fourth factor has particular significance when the party
being sanctioned is a pro se litigant. Morning Star Baptist, 480 F. Supp. 2d at 861.

In the instant case, the court finds that all four Cromer factors weigh in favor of a pre-
filing injunction. First, as detailed above, Reaves' litigation history includes the filing of
duplicative lawsuits challenging the validity of his lease agreements with the RRHA and seeking

13

to recover for unspecified injuries. A State Court dismissed these claims on the merits, and this court dismissed them on procedural grounds. Unfortunately, Reaves has treated these dismissals as nothing more than an invitation to file a new cause of action seeking the same result.

Second, Reaves filed his most recent federal lawsuit with an improper purpose. In considering this factor, the court recognizes the possibility that Reaves had a good faith basis for pursuing his original case in State Court. Whatever that basis was, however, the court finds that it no longer existed at the time of Reaves' most recent filing, given the State Court's judgment on the merits and this court's explanation of res judicata in Case No. 7:08-cv-00484.

Third, Reaves' duplicative complaints have placed a substantial burden on the Defendants. The RRHA incurred $5,232.00 in legal fees and $296.70 in expenses in defending itself and its employee in Roanoke City General District Court. It then incurred $8,313.50 in legal fees and $2,482.34 in expenses in defending itself and its employees in Civil Action No. 7:08-cv-00484 and another $6,762.00 in legal fees and $450.66 in expenses in the instant case. Similarly, the court was compelled to spend its valuable time conducting another hearing to address claims that Reaves already raised, and the court dismissed, in Case No. 7:08-cv-00484.

Finally, Reaves has demonstrated a strong commitment to filing duplicative lawsuits absent some court intervention precluding him from doing so. Given that the State and Federal courts have granted Reaves in forma pauperis status, an award of attorneys' fees and expenses against him is not likely to be paid in the near future, nor is it likely to have substantial impact on his litigation conduct. Absent some effective sanction, Reaves is likely to continue to file suits against the RRHA and its employees relating to his tenancy in public housing. The court finds that no remedy less drastic than a pre-filing injunction would be reasonably certain to deter future abusive litigation conduct by the plaintiff. Cromer, 390 F.3d at 818 (in determining

whether to grant pre-filing injunction the Court must consider whether other, less drastic sanctions would be effective).

Accordingly, the court finds that a pre-trial injunction is "substantively warranted" in this case, and it will grant Defendant's Motion for Sanctions to that effect. <u>Cromer</u>, 390 F.3d at 818. In imposing this type of sanction, the court recognizes that the terms "must be narrowly tailored to fit the specific circumstances at issue." <u>Morning Star Baptist</u>, 480 F. Supp. 2d at 862 (citing Cromer, 390 F.3d at 818-19). Pursuant to the terms of this pre-filing injunction, Reaves must submit certain paperwork with any new federal court filing relating to: (a) Reaves' lease agreements with the RRHA, (b) the alleged condition of any rental units provided to Reaves by the RRHA, and/or (c) any injuries Reaves claims are attributable to any condition in any rental units provided to Reaves by the RRHA. This paperwork must include both: (a) a copy of the accompanying Final Order, and (b) an affidavit signed by Reaves certifying that the claims and/or conduct that are the subject of the proposed lawsuit have never been the subject of any action in State or Federal court. It is the court's hope that this limited sanction will prevent Reaves from filing any further abusive or frivolous lawsuits against the RRHA in the future.

**V.**

For the reasons set forth above, it is hereby **ORDERED** that Defendants' Motion for Summary Judgment (Docket No. 6) is **GRANTED** in its entirety and Defendants' Motion for Sanctions (Docket No. 15) is **GRANTED IN PART**, to the extent indicated by the court. The Clerk of Court is directed to strike the case from the active docket and to send a copy of this Memorandum Opinion and accompanying Final Order to Plaintiff and counsel of record for Defendants.

15

**ENTER**: This _17th_ day of February, 2009.

_James C. Turk_

Hon. James C. Turk
Senior United States District Judge